Next case that I saw on a call this morning is agenda number 7 1 0 8 9 5 3 3 in Ray Veronica see a minor people of the state of Illinois versus Veronica C Good morning, your honors. My name is Stephen Wilson. I'm with the state appellate defender and I'm here on behalf of Veronica C. Veronica your honors is a 12 year old middle schooler and she has attention deficit and hyperactivity disorder and she gets into a pushing and shoving match school with another student and for this she is charged with battery and following a hearing on the merits of this claim the judge finds her delinquent based upon battery insulting and provoking conduct. And furthermore and very importantly for this case he then says that my client is a first offender and that he would place her on supervision if he could but the state objected and so he would place her on probation. Had Veronica not been a middle schooler and instead been a senior in high school and had she been 17 the prosecution could not have vetoed supervision and the judge if he thought the case merited supervision could have imposed that disposition. It's our position that this upside down state of affairs is a violation of either equal protection of law or separation of powers. Now I've tried to point out that Veronica's conduct is very minor as delinquency goes but in addition to that my client since she's only 12 years old is very very much a minor because under the criminal code under this section entitled infancy I believe it's 5 forward slash 6 dash 1 she may not be convicted of any crime. And under the juvenile court act she may not elect to be treated as an adult and my understanding of all the transfer proceedings in juvenile law is that in order to be transferred to adult court a minor has to be at least 13. So if we look at the case law involving examination of the goals of the juvenile court act whether it's rehabilitative or whether it's punitive given her age she lies definitely on that end of the spectrum where we have to stress rehabilitation. If you would educate me on the record what it shows there was an adjudicatory hearing is that correct? Yes that's right a trial I prefer to say. A trial an adjudication hearing at the close of that hearing the court found her delinquent. That's right. Prior to the finding of delinquency was there any request by the minor through by her attorney to impose supervision? No there was not. And then there was a separate dispositional hearing at a separate time is that correct? I believe so yes that's correct. And there would have been a report prepared a pre-sentence or evaluation report is that correct? I do believe that's correct too. Okay. If memory serves. And so tell me what the record shows about at what point in time this supervision aspect came up sui sponte from the court or exactly how did this occur? I believe at the dispositional hearing the state made it clear that they would object to supervision. In other words they indicated their plan before the judge indicated that he was bound by their election. If I remember correctly that's the chronology. So the minor didn't request it at that point? Well the tenor of the she subsequently after the minor's lawyer definitely argued that probation was inappropriate. The minor's lawyer actually argued that the case should have just been closed as and I don't know exactly what that meant. We don't have the record for that. But there was another minor involved in this. And another judge in this other case simply closed the case and dismissed it. So my client's lawyer can be said to have objected to probation even though they may not have specifically requested supervision. Thank you. Would we have to overrule Strzok and TW? No, I don't think so. And if I could talk about TW a little bit right now I think it's appropriate. Because I think it's my opponent's position that my client is independently not eligible for supervision. Because this case proceeded to a delinquency finding. And there's an independent basis there for denying supervision. And TW shed some light on this. And the statute at that time controlling supervision, it had another number, provided and I'll quote this. The court may enter an order of continuance under supervision upon an admission or stipulation by the appropriate respondent or minor respondent of the facts supporting the petition. And before proceeding to adjudication, findings in adjudication. Or after hearing evidence at the trial, but before noting in the minutes of proceeding a finding of whether or not the minor is described, is a person described in Section 2-1. 2-1 was the jurisdictional section of the Juvenile Court Act, which is established that the act applied to delinquent minors. Where I'm going with this, and I ask the court's forbearance for quoting this, but that language, but before noting in the minutes of proceeding a finding whether or not the minor is a person, is a delinquent. That was removed from the statute controlling supervision. And I believe it was removed in 1990. And it is not there now. So in essence, I think a lot of their argument with regard to TW is to like put that back into the code. What about Stralka? As to Stralka, the minor in Stralka pled guilty pursuant to a recommendation of probation. The judge happened to have imposed probation and vacated it later on. In other words, the record really doesn't indicate in Stralka that the state objected to supervision. They recommended probation. But we don't know whether their position was that supervision would have been totally inappropriate. Obviously, if the state is only recommending a certain disposition, then assumedly they contemplate that there might be another one. And so I don't think the court really has to overrule Stralka in order to. Well, there was a special concurrence, you know, which is mentioned in Stralka. Three of the justices in this court had joined in that. And they questioned, as you questioned, the viability and holding of TW. But even that special concurrence concluded with a plea to the legislature to reexamine the Juvenile Court Act. But two and a half years have gone by, and the legislature appears to be happy with the statute as written, at least to the point that they haven't changed anything. So wouldn't that be somewhat persuasive, that your position would be contrary to the legislative intent of the statute as well as the Stralka decision? I guess it would be that. But the court here is the, you know, the ultimate expositor of state law. And I don't think that their inactivity could really be, you know, indicative of anything. Even aside from inactivity, would you agree that the legislature could simply say that it was not allowing supervision for this class of offense or this particular crime in juvenile cases and there would be nothing wrong with that? Yeah, I think that's part of my argument. I think if the legislature wants to say that, well, this case, for instance, was arguably chargeable as aggravated battery because it took place on public property. If they wanted to say that this species of battery could not, an offender cannot receive supervision, then I think that would be okay. Yeah, and if that would be okay, the problem that I'm having is that the fact that the General Assembly has made it so that supervision can only be allowed if interested parties do not object, how does that change in the equation throw it into a separation of powers problem? Well, I think the minor has got to have an opportunity to say, I didn't do this, for starters. And maybe this will shed some light on this. This is not strictly a diversion program or a deferred prosecution statute. It might be, but it doesn't necessarily have to be that way. It could, the minor may feel as though I didn't do this and I don't even, I don't want even supervision to be on my record. I want to follow up on Justice Thomas's question. You've acknowledged that the legislature could provide, could say there's no continuance under supervision in juvenile cases, and that would not be a violation of equal protection. Why putting some, allowing for continuance under supervision, but putting some antecedent conditions on it, why does that violate separation of powers? I think that was the question he answered. And I didn't ask, rather, and I didn't hear an answer to that. I'm sorry, I missed something a little at the outset of your question. Basically the same question. You acknowledged, you agreed that the legislature could say there's no supervision in juvenile cases. And you agreed there would be no separation, excuse me, no equal protection violation. Is that correct? No, I wouldn't agree to that. I would say that would be an equal protection problem because you give an adult the advantage of this deferred prosecution, but you deprive a minor of that. So you say there is, you say the legislature could not remove that option from the Juvenile Court Act. And at the same time give it to an adult, I would say they could not. But doesn't that fly in the face of everything we do with the differences between adults and minors anyway, the whole idea that we treat them differently for different purposes because they are minors? I would suggest not because the scheme that is envisioned where an adult could receive this deferred prosecution and a minor could not is kind of a topsy-turvy world in which the more punitive, retributive sanction is reserved for someone who is more deserving of rehabilitation. And I agree there's differences between, you know, a minor and an adult, but what I would suggest is that they all cut in our favor and against that type of scheme. But I wanted to get back to... Excuse me. I was going to say, isn't the question, though, too, who is objecting? We have now a prosecutor who is diligently prosecuting the offender and then has the opportunity also to determine away from the judge which discretion of what disposition to impose. I mean, isn't that kind of a problem? Well, anticipating a statement, I wanted to make that the legislature is provided for this range of sanction for a minor in her situation. And the prosecutor is vetoing a decision within that range. To make an analogy... Counsel, if I may. Yes. I'm having the most trouble understanding how we can vote your way without overturning Strelka. I know you said that you can, but I'm... I think Strelka is just factually distinguishable because, in a sense, perhaps the better, as the Strelka decision points out, the proper remedy there would have been for the minor to withdraw this admission he made because this was the deal that was made, that he would receive probation. So there's an element of equity involved there that's not involved here. We walked in... There's a statute that describes how supervision is supposed to be used in a juvenile court. I personally think that that's probably wrong, not wrong in the legal sense, but wrong as a proper judgment. But I don't think the fact that I think something like that is wrong authorizes me to necessarily overturn jurisprudence that this court has enacted. What I'm asking of you is, how does Strelka not fall in light of the position that you've taken in this case? I've done my very best to answer that, Your Honor, on a factual basis. Can you tell me what factual difference makes the difference then? Can you do that? Because for the judge in Strelka to simply throw out everything that had been agreed to is really fundamentally different than giving the judge a discretion up front and saying, what is your decision, and then living by that. What gives them the discretion? Where does the discretion come from in light of the statute that says all interested parties must agree, including the state's attorney? Well, I think it kind of begs the question of whether the state's attorney should have a right to just object to a disposition that's within the law. But aren't you arguing, in effect, that that's where the constitutional infirmity is? Yes. So if we were to agree with you, wouldn't we have to overturn Strelka? I just don't believe that Strelka would have to be overturned. Thank you, counsel. I don't want to believe that. Counsel, with regard to my question, the state's attorney's opportunity to object would override any discretion the judge had. Is there any place else in the criminal code, criminal act that provides for that kind of removal of discretion? Not that I'm aware of. As a matter of fact, I was thinking that if this is okay, if this is constitutional, I don't know what would stop the legislature from passing a law that says that the offender can receive probation unless the prosecutor objects. Incidentally, I wanted to get back to something about supervision. Your Honor mentioned that you think that, as a general rule, supervision is inappropriate for a minor. Do I get that right? Yes, but it's a gratuitous statement. It's the same as the statement that I joined in the special concurrence, that I think that the law ought to be changed in the legislature and that supervision would be a very useful tool to have in these cases. But they don't have it, and they don't have a source of it at this moment. Well, my statement is somewhat informational, but at the time TW was decided, the supervision statute was actually a very skeletal matter. It had only about four numbered paragraphs. Today, if you look at that 5.615, it is a lot more akin to, I believe it's 5.720, the statute controlling probation. As a matter of fact, there's a whole host of incidents or conditions of supervision that mirror almost identically those that can be imposed for probation. I think there are about 20 of them. So that the judge's discretion has been broadened. We all agree that the legislature, if they want, could end the disposition of supervision in juvenile court and in criminal court everywhere if they wanted to. Yeah, I think that would be possible, yes. But it would have to be even-handed, though. That's my position. I don't think it could be selective like that. The fact that you can give it to an adult is an equal protection violation? Yes, because my client, Your Honor, would have to wait until she's 21 years of age to have this expunged. I understand that. I want you to maybe answer this last question. Why doesn't that require us to overturn Strzok? And I belabor it, but I can't see. I haven't seen the factual difference. I don't know how we can change the law in this area without holding that case unconstitutional, T.W. and Strzok. I don't think it has to be overruled because of the- Fair enough. Okay. Fair enough. All right. Oh, I can see my time is up. Take a minute or two if you'd like. Okay. I'll give it some more thought, but I feel comfortable saying that we should have respected the judge's decision in this case that he would have preferred to impose a term of supervision. Thank you very much. Thank you, Counsel. May it please the Court. I am Gopi Kashyap from the Illinois Attorney General's Office here on behalf of the people of the State of Illinois. The first question in this case is whether a respondent even has standing to raise her constitutional arguments. Here in the trial court during the findings phase, the trial court completed the first part of the trial. It determined guilt. And then it concluded the findings phase by expressly determining-I'm sorry, let me start over. Here during the findings phase, the trial court completed the first part, which is the trial. It determined the facts of the offense. And then it went on to the second part of the findings phase, and it expressly determined guilt. It then went on to sentencing, and it scheduled a sentencing hearing, and it then imposed the proper sentence. Section 5615 operates only during the findings phase. And so once the trial court had concluded the findings phase by determining guilt, the trial court could not then go back and impose a continued sentence under supervision without vacating the delinquency finding. So Section 5615 was never applied against the respondent, and she was not aggrieved by its operation. Respondent- Are you making kind of a forfeiture argument that she should have requested that earlier if she would have wanted to have that opportunity at all? Either she should have requested it during the findings phase, or the trial court on its own could have mentioned it during the findings phase. For example, it could have said during the findings phase before it went on to determine guilt that it was thinking of giving a continued sentence under supervision under Section 5615, and then at that point it could have either obtained the consent of both parties and entered that order, or if the State's attorney would have objected, which it would have, it would have then entered a finding of delinquency or guilt on the record and then moved forward. In either way, though, the court still doesn't have discretion, whether it be before or after. It assumes that the statute says that the State's attorney, if it objects, there's no supervision. There's no continued sentence under supervision, Your Honor, and after a finding of guilt is entered under Section 5710, the legislature has determined that supervision should not be a sentencing order that the court can enter. So it's not authorized, the legislature, to give supervision after a finding of guilt. But what about before? And before a finding of guilt, yes, Your Honor, the trial court would... How can the court impose supervision before there's a trial, unless there's a plea agreement? Yes, Your Honor, but the problem is that a continued sentence under supervision, it's not a sentence. So when we're talking about the sentencing power of the court, if supervision is not a sentence under the Juvenile Court Act, then there's no infringement on the sentencing power, because a continued sentence under supervision is entered only before a finding of guilt, and thus it's not a consequence of the minor's guilt, and therefore it cannot be a sentence. And what's more important is that a minor has the same right as the State's attorney to object and say, I don't want a continued sentence under supervision. If it were an actual sentence, the minor would never have the comparable right to do so. The court would, in its discretion, impose whatever sentence it deemed worthy, and then they would move forward. Does Strzok decide the outcome of this case? Yes, Your Honor. To the extent, Respondent argues that the court has the authority to enter supervision, regardless of the State's attorney's position on the matter, and in Strzok, this court expressly rejected that position. It stated that the trial court cannot impose a continued sentence under supervision over the State's attorney's objection. So in effect, this court would have to overrule Strzok to reach Respondent's requested position. But turning back to the standing argument, Respondent is requesting modification of her sentencing order, her sentencing order, to request to make it reflect a continued sentence under supervision under Section 5.6.15. Guilt is on the record. The statute is clear. Once guilt is on the record, the court must proceed to sentencing. And the types of sentencing orders authorized under Section 5.7.10 are probation and conditional discharge. But a continued sentence under supervision under 5.6.15 is not available. So this court cannot give Respondent the remedy she seeks, because it would require to read into the authorized sentencing orders under Section 5.7.10, a continued sentence under supervision. But that's not authorized, and the General Assembly determined that it shouldn't happen. So for this court to, it would be extraordinary for this court to read that into the statute and then to address the, and so she has no remedy, excuse me. And if she has no remedy, then the appeal is both moot and there's no standing. Clarify something for me. I think you argued that the court had no authority to enter a continuance under supervision after making findings of guilt. But doesn't the statute really say that this can be done prior to, it allows for supervision as an option before proceeding to adjudication? Is there a difference between finding of guilt and an adjudication? Yes, Your Honor. In Strelka, and again in Samantha v., this court explained that there are three stages to a juvenile delinquency proceeding. The first phase is called the findings phase, and that phase consists of two parts. The first part is a determination of the facts underlying the offense, and that is via an admission, a stipulation to the facts, or evidence at a trial. The second part is the determination of guilt. And Section 5615 comes into play between the first part and the second part, and that's exactly what the statute says. At one point, I believe it's subsection 2, the statute says that if either party, the State's attorney or the respondent, object to a continuance under supervision, the court shall proceed to findings and adjudication and sentencing. So adjudication is the second part of the proceedings after the conclusion of the findings phase, after the determination of delinquency. And at the adjudicatory phase, what the court does is determine whether it is in the best interest of the minor and the public to make the minor a ward of the court. The court does not have to, even if the minor admitted to the facts, does not have to make the minor a ward of the court. And that's exactly what the same trial judge did for a respondent's co-defendant. It determined, after listening to all the sentencing evidence, that yes, there was a finding of delinquency, but that particular minor defendant did not need a sentence, and so she was not adjudicated a ward of the court. It was not in her best interest. But after the adjudication, the court then proceeds to the dispositional phase. So if the court has made the minor a ward of the court, then you moved on to the dispositional phase, and that's when you have to, that's when the court orders the sentences that are authorized under Section 5710. And a continuance under supervision is not authorized under that provision. I'd like to now turn to the separation of powers argument. As Justice Thomas noted, this court would have to overrule T.W. in order to find Section 5615 unconstitutional. In T.W., this court held requiring the consent of the state's attorney before a court may order a continuance under supervision does not violate the court's sentence. T.W. was correctly decided, because requiring the state's attorney's consent for a continuance under supervision did not interfere with the court's sentencing power, because a continuance under supervision, as we've discussed, is not a sentence, and therefore it does not implicate a trial court sentencing power.   Those are the separation of powers principles that this court espoused in T.W., in Phillips, and in Cousins, the idea being that where the trial court retains the discretion to actually impose a sentence, and in this case, nobody is saying that the Section 5710 sentencing orders are unavailable to the trial court. But where the court retains the discretion to impose the sentence, and where the prosecutor is exercising discretion at a stage of the proceedings traditionally within the prosecutor's discretionary realm, there can be no separation of powers problem. And here, the prosecutor is exercising its discretion as a representative of the people who is a litigant to this case before the conclusion of the findings phase. The prosecutor is saying that society has an interest in obtaining a determination of guilt in this particular case, that this particular case requires full prosecution. And at this time, the State's Attorney enjoys wide discretion in the initiation and management of litigation against minors charged with criminal offenses. In fact, what Section 5615 does by requiring the consent of both parties and all parties, including the trial court, it properly reflects the impermissible overlap in authority between the executive and judicial branches in the period from initiation of charges to the conclusion of the findings phase. It's an alternative to prosecution and sentencing imposed before a finding of guilt or delinquency. It's not a sentence and thereby probably requires the consent of both litigants before a court may order it. Thus, consistent with this court's separation of powers jurisprudence, requiring the State's Attorney's consent does not infringe upon the court's sentencing power. I'd like to turn now to Respondent's equal protection argument. First, Respondent acknowledges that juveniles are not similarly situated to adults, and the appellate court found as much. Juveniles are different from adults because they lack the maturity that adults have. They're more vulnerable to peer pressure, they're more susceptible to negative influences, and their character is not as well-formed. And as this court recognized in Konetsky, juveniles charged under the Act never face the possibility of a conviction or an adult criminal sentence. In fact, the goals and the legislative purpose of the Act are significantly broader and material respects different from the goals and purposes of the Code. Thus, juveniles and adults are not similarly situated. Further, the General Assembly's different treatment of juveniles in this realm is rational. The United States Supreme Court in Scalvi-Martin explained that it is the differences between juveniles and adults. It is the fact that juveniles don't have experience, they don't have the maturity, they don't have the self-restraint, and they don't have the comprehension, that these differences make minors more likely to recommit crimes because there's an attitude of gamesmanship. If a minor gets away with something, then it feels he or she has gotten away with something. And so the idea is that society has a strong and legitimate interest in rehabilitating that minor. The General Assembly also has a strong interest in protecting the public. And in this particular case, the General Assembly was concerned with the dramatic increase in juvenile crime and the court's failure to adequately protect society. To that end, it was conceivable for the General Assembly to believe that giving the state's attorney someone who is obligated and presumed to act in furtherance of the act's purposes and who has investigated the particular crime and is intimately familiar with the facts and circumstances of that particular case, to give that state's attorney a say in whether particular criminal conduct receives full prosecution and a determination of guilt, rather than the possibility of a diversion and no delinquency finding at all, that that would better ensure public protection, juvenile rehabilitation, and accountability. And that is not contrary to the act's purposes, because if the state's attorney exercises his discretion to object to a contingent center's supervision, it's preventing the minor. All it's doing is requiring a delinquency finding, and thus the minor does not believe that she got away with something. It ensures that criminal conduct results in accountability and deterrence, and thus it furthers the act's purposes. And in that way, it cannot be arbitrary. So in sum, this Court should not even address Respondent's constitutional arguments, because the appeal is moot. She doesn't have standing because she's not entitled to the remedy that she requests, and also because Section 5615 was never operated against her. This Court should further, if the Court finds that she does have standing, this Court should further affirm T.W. not overrule that decision. It should also decline to overrule Strzoka and hold that the separation of powers clause is not violated by requiring the state's attorney's consent. And finally, Respondent has failed to show a clear equal protection violation, because the legislature's decision to treat juveniles differently in this circumstance was certainly rational. The Court has no further questions. We respectfully request that this Court affirm the Appellate Court's judgment. Thank you, Counsel. Thank you. There's a little bit of an irony here, because if you look at T.W., the state's attorney in that case said that, he asked the Court not to proceed to place the minor under supervision, because the state's attorney had witnesses, and when those witnesses testified, they would have been able to demonstrate that supervision was not appropriate. And now it seems as though the shoe is on the other foot, and the interpretation of the supervision statute proffered by my opponent is that there's like some kind of a race to this supervision, and if someone pulls the trigger before someone else, then we can impose supervision before we hear the facts of the case. T.W. in turn relied upon Phillips, and Phillips was a drug diversion statute in which the probation or the parole officer could veto this diversion for drug treatment. But that involved the cooperation of a third party in the offender's rehabilitation.  There isn't any someone else out there. There's no indication here that the parents are not going to cooperate with this. And so in that sense, T.W. is distinguishable. Excuse me, was the defendant in Phillips a minor? He was not. I don't think he was. No, he was not. You know, we grant parents, just regular parents, a lot of discretion under substantive due process standards in child rearing. And the backdrop to any of these delinquency things is that there's somehow been a failure in the home. May have been minor, may have been major. Here it was very minor. Under the parent's patriae doctrine, the court now becomes the parent. And I think we should grant that court the same type of discretion that an idealized parent would have in directing the minor's future. So we're only asking that the judge be the decision maker and not be interfered with arbitrarily by someone else. The state seems to be arguing that this is not a disposition that's up to the judge, but rather it's part of the general overall prosecution, I guess, of the case, that this is a continuance of the case under supervision under certain conditions, which gives the prosecutor the discretion to get involved in, just like discretion as to whether to prosecute or not. How do you respond to that? Well, they – I understand that's their position. They're likening this to a naliproseki. But they cite a case called Woolsey. And if you look at the Woolsey case, that case states that the prosecution does not have unbridled discretion to naliproseki a case. The prosecution needs the consent and the approval of the court. So I think that analogy that this is an interference with the prosecutorial role kind of fails. We're not suggesting that they can't charge someone as they think the facts merit or that they can charge whoever they want in this affray as they wish. And we're not saying that they can't negotiate a certain disposition that they deem proper. All we're saying is that – well, I think what they're saying is that they should be constitutionally entitled to some kind of a hammer to kind of coerce an admission of an ad minor, that, well, you know, we're not going to give you supervision, but if you turn around and admit this, then we're on board for that. And I don't think that's consistent with any constitutional vision of what a prosecutor's role is. Naturally, there's a coercive kind of an element to any kind of a charge because the offender, the minor, the delinquent, runs the risk of losing on the merits. And, of course, as I said, the minor or the delinquent, you know, runs the risk that a recommendation to the court as to the disposition is not going to be as favorable following a full-blown hearing as it would be if we had admitted. But that's baked into the system. Unless there are any further questions, I have nothing to add. Thank you very much. Thank you, Counsel. Case number 108-500 will be taken under advisement as agenda number 6. Next case on our call, I'm sorry, case number 108-953.